UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER BAKER, )<br>)<br>*Plaintiff*, )<br>)<br>*vs.* )<br>)<br>RICHARD MCCORKLE, *individually and in his* )<br>*official capacity as Sheriff of Henry County*, )<br>BRUCE BAKER, KIM CRONK, ED YANOS, )<br>RICHARD BOUSLOG, ROBIN RENO-FLEMING, )<br>STEVEN DUGGER, NATHAN LAMAR, CLAY )<br>MORGAN, MICHAEL THALLS, HAROLD GRIFFIN, )<br>HENRY COUNTY COMMISSIONERS, and HENRY )<br>COUNTY COUNCIL, )<br>)<br>*Defendants*. ) | No. 1:16-cv-03026-JMS-MPB |

**ORDER**

Plaintiff Christopher Baker, an inmate at the Henry County Jail in New Castle, Indiana (the "Jail"), brings this putative class action pursuant to 42 U.S.C. § 1983, alleging that the Jail is overcrowded and presents unsanitary and unsafe conditions, which he contends violate the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. Defendants, which include Henry County Sheriff Richard McCorkle, several Henry County Commissioners and Council members, and the Henry County Council, have asserted as an affirmative defense their contention that Mr. Baker failed to comply with the exhaustion requirements of the Prison Litigation Reform Act ("PLRA").

The Court held a hearing on March 7, 2017, the parameters of which were established by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). For the reasons explained in this Entry, the Court finds that Defendants have met their burden of proof as to claims relating to certain conditions at

the Jail, but that Mr. Baker has exhausted his administrative remedies regarding his overcrowding allegations.[1]

# I.
## STANDARD OF REVIEW

The PLRA requires that a prisoner exhaust his available administrative remedies before bringing a suit concerning prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). The statutory exhaustion requirement is that "[n]o action shall be brought with respect to prison conditions…by a prisoner…until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 91 (2006) (footnote omitted); *see also Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004) ("In order to properly exhaust, a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require") (internal quotation omitted). "In order to exhaust administrative remedies, a prisoner must take all steps prescribed by the prison's grievance system." *Ford v. Johnson*, 362 F.3d 395, 397 (7th Cir. 2004).

---

[1] This action was originally brought by five Plaintiffs, but the Court granted summary judgment in favor of Defendants on the claims of four of those Plaintiffs. [Filing No. 62.] The Court found that Plaintiffs had not even attempted to argue that three of the Plaintiffs had exhausted administrative remedies, and that the only grievance filed by the fourth Plaintiff related to medical treatment – which is not the subject of this litigation. That left only Mr. Baker's claims for consideration, and the Court then set the March 7, 2017 *Pavey* hearing to consider whether Mr. Baker had exhausted his administrative remedies.

## II.
## FINDINGS OF FACT[2]

Having considered the evidence presented at the hearing, the Court makes the following findings of fact:

### A. Grievance Procedure at the Jail

When individuals are booked into the Jail, it is Jail policy that they be given a copy of the Inmate Handbook. Upon receipt of the Inmate Handbook, those individuals sign a page at the end of the Inmate Handbook titled "Acceptance of Manual Received by Inmate," and this signed page is placed in their file, or "jail packet." The Inmate Handbook outlines the grievance procedure at the Jail as follows:

> Grievance procedures established by Henry County Jail consists of the following steps or options. These steps include:
>
> 1. An inmate may file an informal grievance by discussing the specific problem with a staff member. Normally these informal grievances are filed verbally with staff having contact with the inmate during routine supervision. Where and when possible, staff receiving the grievance may address the complained of condition directly.
>
> 2. If the problem cannot be resolved through informal discussions or the inmate wishes to document the grievance for additional consideration, he may submit a written grievance to the grievance officer/board.
>
> 3. Formal grievances are filed in writing and an inmate may ask for assistance from officers or other inmates in writing out the grievance on the Inmate Grievance Form. Grievance forms and writing materials are made available to inmates upon request. A problem that results from a specific event or action is presented on the approved form within seven [7] days of the occurrence. On a daily basis, officer's (sic) conduct rounds throughout the facility giving inmates the opportunity to turn in written grievances. After acknowledgement of receiving [the] grievance, signed and dated by the receiving officer, the grievance is sent directly to the Jail Commander who reviews the filed grievances. The grievance:
>
>    a. Is in writing;

---

[2] Any finding of fact should be deemed a conclusion of law to the extent necessary.

3

    b. Clearly defines the situation in question and the facts upon which it is based;

    c. Specifies the wrongful act or situation and describe[s] the harm done;

    d. Arises out of an act or failure to act by Henry County Jail;

    e. Addresses a matter within the control of the facility;

    f. Requests a remedy that is within the power of the facility to grant;

    g. Is submitted within seven [7] days of the occurrence;

    h. Includes a copy of any written supporting documents or pertinent discussion, decision, and justification; &

    i. Specifies a requested remedy.

4. The decision of the grievance officer/board is presented to the inmate in writing, no later than fifteen [15] days after the grievance is received. The grievance officer/board provides for meaningful relief of a substantiated grievance.

5. Inmates may be disciplined for filing frivolous or repeated grievances that consistently have little or no merit.

6. Appeal of a grievance officer's/board's decision is made to the Administration. The Administration has fifteen [15] days from the date the grievance is received to respond, and the decision of the Administration is final.

Inmates frequently initiate informal grievances by discussing various complaints with correctional officers or other Jail staff. Occasionally, verbal complaints are addressed to the inmate's satisfaction and the issue is resolved. If not, the inmate may file a written grievance by completing a Grievance Form. The Grievance Form contains blanks for the inmate's name, the date of the report, and the inmate's cell block, and a space to fill out that states "I WISH TO FILE A GRIEVANCE. I CERTIFY THAT MY STATEMENT IS TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE AND BELIEF." There are also blanks for the inmate to sign and date the Grievance Form, and to provide the time of day the Form is completed.

An inmate may give a completed Grievance Form directly to Jail staff, or may place it in the bars of their cell for collection. The Grievance Form contains blanks at the top for Jail staff to fill in, indicating which staff member received the Form, and the date and time the Form was received. Although Jail staff are instructed to fill out this information, they sometimes do not do so.

Jail staff then place the Grievance Forms in a basket with other Jail paperwork, and the Jail Commander, Brent Grider, collects the paperwork from the basket each morning, distributes it to the proper recipients, and retains the Grievance Forms for his consideration. Specifically, Commander Grider reviews Grievance Forms the same day they are collected or soon thereafter, and writes his response at the bottom of the Grievance Form in a blank space stating "Action taken to fulfill request." Commander Grider signs and dates his response, and a copy of the response (written on the Grievance Form) is then supposed to be hand delivered back to the inmate. The originals of the Grievance Forms are put into a grievance book in the booking area.

Commander Grider has assisted inmates in resolving grievances on different occasions. For example, he helped Mr. Baker correct his release date, which was listed in the system incorrectly. Additionally, when inmates have complained about mold in their cells, he has given them cleaning supplies. If an inmate is not satisfied with Commander Grider's response to their grievance, however, they may appeal the decision by telling Jail staff they would like to appeal, and filling out another Grievance Form stating that they want to appeal the decision. There is not a separate form for appeals – inmates are to use a regular Grievance Form and submit it to Sheriff McCorkle or Major Jay Davis. Sheriff McCorkle has been the Henry County Sheriff since January 2015, and has never received an appeal from an inmate.

**B. Inmates' Awareness of the Grievance Procedure**

Testimony at the March 7 hearing indicates that, although some inmates or former inmates testified that they never received the Inmate Handbook, most inmates are aware of the opportunity to file grievances, and many have done so. As to appealing responses to grievances, two issues are apparent: (1) inmates testified that they never received responses to their grievances; and (2) inmates testified that they were not aware of the appeals process at all.

**C. Mr. Baker's Grievances**

Mr. Baker signed the last page of the Inmate Handbook, acknowledging that he received the Inmate Handbook, accepted the rules, policies, and information contained in the Inmate Handbook, and agreed to follow those rules and policies. Although a copy of this page was placed in Mr. Baker's jail packet, he confirmed that his signature appears on the page, and it is the Jail's practice for Jail staff to give a copy of the Inmate Handbook to the inmate after they sign the last page and the last page is removed from the Inmate Handbook, Mr. Baker denies receiving a copy of the Inmate Handbook.

Nevertheless, Mr. Baker[3] has filed several grievances, demonstrating that he is at least aware of the first step in the grievance process – completing a Grievance Form. Specifically, Mr. Baker completed and submitted the following Grievance Forms:

- April 26, 2016 Grievance: "Brent, I was wondering if I can get your approval for Rev. Jerry DeHart to come visit me please and thank you very much. If you need him to contact you or need his number I can get it to you. Thank you for your time." Mr. Grider's April 27, 2016 response states: "This is fine."

- May 4, 2016 Grievance: "I was wondering if I could get your approval to have a 45 min. or an hour visit with Rev. Jerry DeHart next week please and thank you very much." Mr. Grider's May 5, 2016 response states: "Visits are 30 min. If I give you longer everyone wants a longer one."

---

[3] Mr. Baker testified that during an earlier period of incarceration, he received a copy of the Inmate Handbook.

6

- May 6, 2016 Grievance: "I was wondering if I could talk to a guard in private away from the block if possible PLEASE!!! Thanks." Mr. Grider's May 6, 2016 response states: "Spoke to him – he stated he was stressed and afraid [a certain inmate] was going to be placed in his block. Gave assurances. He returned to block."

- May 8, 2016 Grievance: "I NEED to talk to[ ] you A.S.A.P. Please ALONE." Mr. Grider's May 8, 2016 response states: "Spoke w/ Baker in private. He's concerned [another inmate] is going to convince someone to turn on him. Logged in Spillman."

- May 9, 2016 Grievance: "Can I talk to you in priv[a]te about personal stuff that I need to talk with someone I can trust. Please and Thank you." Mr. Grider's May 10, 2016 response states: "I spoke with inmate. Problem resolved."

- May 12, 2016 Grievance: "Can I speak with you when you get a chance please over what we talked about before. Thanks" There is no response from Commander Grider listed on this Grievance Form.

- May 12, 2016 Grievance: "To: Sheriff McCorkle, Major Davis & Commander Grider – I'm writing you in regards to an (sic) serious issue that is on my mind. First of all it bothers me that D block and I block can beat on the doors and walls and keep us all awake yet they get to have tv and microwaves but we don't get to even have a tv at all. Second you guys tell us to write grievances to you guys and when we do you don't get them answered at all. I would like to talk with the three of you in person about other things to please and thank you very much. And I don't want a reply saying I don't know what I'm talking about or a reply saying if I don't like things here then I should bond out. Thanks again." Commander Grider's May 12, 2016 response states: "Spoke to him in person on 5/12/16."

- May 23, 2016 Grievance: "Attn: Commander Grider – We know that the jail is over packed at this time and there isn't much that can be done. Knowing that there are seven people in this block our cell has four people in one cell two of us being on the floor. All we are doing is trying to keep the dayroom area and [another inmate] is trying to run the block and he needs to be moved before he make[s] someone mad. Thanks." Commander Grider's response states: "No-one will be moved. You can't have a private cell because you can't get along."

- May 24, 2016 Grievance: "Attn: Commander Grider – In regards to the last grievance you received from H Block I (Christopher R. Baker Inmate #134862) would like to add that not only is [another inmate] trying to run the block also I myself had a incounter (sic) with him Saturday where he hit me in the nose and choked me. I confronted M. Carlson about it and told him that I didn't want to catch a new charge for defending myself and he told me that as long as I

7

> didn't throw the first punch I wouldn't get charges pressed on me. I just wanted to let you know how he is acting in here and how he thinks he can say who can and can't be in the block or in his cell. Thanks." Commander Grider's May 24, 2016 response stated: "I doubt that Officer Carlson told you that you would not get charged. I will have charges brought against any and all people fighting. As far as moving people you all are in this block because you cannot go anywhere else you need to learn to get along."

- May 24, 2016 Grievance: "Attn: Commander Grider – I was wondering if there was any way you could find Bill Palmer's number for me so I can contact him about church stuff or his address so I can write him Please & Thank you." Commander Grider's May 31, 2016 response states: "I do not have his number."[4]

Mr. Baker testified at the March 7 hearing that he did not receive responses to any of his grievances. However he did outline the response he received to his May 23, 2016 grievance in an affidavit, and also stated "I knew that the jail was over packed, but this is the response is (sic) typically what I receive whether formal or informal grievance was filed." Additionally, Mr. Baker indicated frustration with prior responses in his May 12, 2016 grievance, stating "[a]nd I don't want a reply saying I don't know what I'm talking about or a reply saying if I don't like things here then I should bond out." Mr. Baker did not know about the process to appeal grievances, and believed he had exhausted the grievance process when he filed his initial Grievance Forms.

**D. Jail Overcrowding**

Since Commander Grider became Jail Commander in mid-2002, the Jail has exceeded its original maximum capacity of 68 inmates. Commander Grider testified that he does not have the power to release inmates, and that there are currently too many inmates in the Jail. He stated that it is not within his power to reduce the overcrowded conditions of the Jail. Additionally, Sheriff

---

[4] Mr. Baker also filed a grievance on December 13, 2016, over a month after filing this lawsuit, regarding his release date. This grievance is irrelevant to the issue at hand, because a prisoner must exhaust administrative remedies before the lawsuit is filed. *Ford*, 362 F.3d at 398 ("Section 1997e(a) says that exhaustion must precede litigation"). Grievances filed after the fact are irrelevant.

McCorkle testified that the Jail is overcrowded, he cannot do anything about it, and he is only able to make suggestions and meet with the Henry County Council and Commissioners regarding the issue.

## III.
### DISCUSSION

At the outset, the Court notes that Mr. Baker's counsel presented a great deal of evidence at the March 7 hearing related to other current and former inmates, their grievances, and even conditions at the Jail that they were unhappy about but for which they did not file grievances.[5] While other inmates' experiences filing grievances may be relevant to the issue of whether the administrative process was known and available to inmates, there is an important distinction between that issue and the issue of whether Mr. Baker has exhausted his administrative remedies for the claims he raises in this litigation. Accordingly, it is important to set forth and consider only the claims that Mr. Baker has alleged in the Complaint, which states:

> Plaintiff Christopher Baker…alleges the following in support of his claims of violations of his Fourth, Fifth and Fourteenth Amendment Rights:
>
> a. He has had to sleep on the floor for one hundred fifteen (120) (sic) days with nothing but a one-inch thick, moldy mat.
>
> b. There is mold on the walls, ceiling, and floor of his cell.
>
> c. He has not been permitted to use the outside recreation area since April.
>
> d. He has been forced to sleep naked in a padded cell and to share that cell with another naked inmate.

---

[5] At the March 7 hearing, Mr. Baker, by counsel, attempted to introduce exhibits that were not on his exhibit list, and also attempted to rely on grievances filed after this lawsuit was initiated and for which counsel assisted with the preparation. The Court cautions that it expects and requires that all parties fully comply with Court orders, deadlines, and with statutory and procedural requirements.

[Filing No. 1 at 6-7.] With these parameters in mind, the Court will consider whether Mr. Baker has exhausted his administrative remedies for these claims.

### A. Legitimacy of the Grievance Process

The Court first considers whether the Jail's grievance process was legitimate, thus requiring Mr. Baker to fully exhaust the process before initiating this litigation. While the PLRA requires that prisoners exhaust "such administrative remedies as are available" before bringing a suit related to prison conditions, 42 U.S.C. § 1997e(a), it "does not, however, demand the impossible" and "[r]emedies that are genuinely unavailable or nonexistent need not be exhausted." *Pyles v. Nwaobasi*, 829 F.3d 860, 864 (7th Cir. 2016).

At the March 7 hearing, several present and former inmates testified that they did not receive the Inmate Handbook, which sets forth the grievance procedure. Mr. Baker testified that he did not receive the Inmate Handbook, despite signing a page acknowledging that he did. Whether or not Mr. Baker received the Inmate Handbook is irrelevant to the issue of whether he exhausted his administrative remedies, however, because Mr. Baker clearly was aware of the need to file grievances. In fact, he filed ten grievances between April 26, 2016 and the filing of this lawsuit. The Court finds he was aware of the first phase of the grievance process, knew he had to fill out a Grievance Form, and knew how to submit a Grievance Form. Mr. Baker was required to complete the first phase of the grievance process by filing a Grievance Form, and he did so for the issues raised in his grievances, which the Court will discuss below.

As for appealing grievances, the Court finds that the appeals process at the Jail is so unclear that Mr. Baker was not required to appeal his grievance decisions in order to exhaust his administrative remedies. The Inmate Handbook is very vague regarding appealing a grievance decision, stating only that "[a]ppeal of a grievance officer's/board's decision is made to the

Administration." The Inmate Handbook does not detail how to accomplish such an appeal – for example, which form to use, what information to include, and who is considered "Administration" to which an appeal should be directed. Multiple present and former inmates testified that they were not aware of the appeals process at all. The Court also finds it significant that the Jail did not provide a separate appeal form, and instead inmates were to submit appeals on the same grievance forms used to initiate a grievance. Most tellingly, Sheriff McCorkle testified that he has never received an appeal. Because the appeals process is so vague, the Court finds that Mr. Baker was not required to appeal his grievance decisions in order to exhaust his administrative remedies.[6] *See Hernandez v. Dart*, 814 F.3d 836, 842 (7th Cir. 2016) ("'[U]navailability' extends beyond 'affirmative misconduct' to omissions by prison personnel, particularly failing to inform the prisoner of the grievance process…. It is not incumbent on the prisoner 'to divine the availability' of grievance procedures. Rather, prison officials must inform the prisoner about the grievance process") (citations omitted); *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015) ("Prisoners are

---

[6] Mr. Baker also testified at the March 7 hearing that he did not receive any responses to his grievances, so could not have known whether to appeal the decisions. This could constitute additional grounds for not requiring him to appeal those decisions. *See, e.g.*, *Roberts v. Neal*, 745 F.3d 232, 236 (7th Cir. 2014) ("Roberts never received a response from the warden, and so didn't have to do anything further to keep his grievance alive"); *Moore v. Feinerman*, 515 Fed. Appx. 596, 598 (7th Cir. 2013) ("If Moore is correct that the prison failed to respond to his grievances, an appeal to the Board was an unavailable remedy and need not have been exhausted"). The Court notes, however, that Mr. Baker set forth the response to one of his grievances in an affidavit, and the Court is skeptical regarding his claim that he only added that detail to his affidavit after counsel showed him the response. He also referred in his affidavit to responses he typically received to grievances regarding overcrowding. Moreover, Mr. Baker stated in his May 12, 2016 grievance "And I don't want a reply saying I don't know what I'm talking about or a reply saying if I don't like things here then I should bond out." This indicates that Mr. Baker had previously received negative responses to prior grievances. Ultimately, whether or not Mr. Baker received responses to his grievances does not matter for purposes of whether he exhausted his administrative remedies, as the Court has found that he was not required to appeal the responses to his grievances due to the vagueness of the appeals process.

required to exhaust grievance procedures they have been told about, but not procedures they have not been told about").

### B. Issues for Which the Grievance Process Had to be Utilized

Mr. Baker argued at the March 7 hearing that he did not need to exhaust administrative remedies for the issue of overcrowding at the Jail because there was nothing Jail administrators could do to alleviate overcrowding. Mr. Baker points to the Inmate Handbook, which states that a grievance must "[a]ddress[ ] a matter within the control of the facility," and argues that he was not required to file a grievance related to overcrowding because the issue was not within the Jail's control.[7]

The Court agrees with Mr. Baker. Commander Grider and Sheriff McCorkle both testified that there was nothing they could do about overcrowding. Specifically, Commander Grider testified that he does not have the power to release inmates, that there are currently too many inmates in the Jail, and that it is not within his power to reduce the overcrowded conditions of the Jail. Additionally, Sheriff McCorkle testified that the Jail is overcrowded, that he cannot do anything about it, and that he is only able to make suggestions and meet with the Henry County Council and Commissioners regarding the issue. According to the Jail's own grievance policy set forth in the Inmate Handbook, Mr. Baker was not required to file a grievance regarding the issue of overcrowding since it is an issue beyond the Jail's control. *See Booth v. Churner*, 532 U.S. 731, 736 (2001) (prisoner need not exhaust administrative remedies "where the relevant administrative procedure lacks authority to provide any relief or to take any action whatsoever in response to a

---

[7] Niether Mr. Baker nor the former Plaintiffs made any argument based on the language of the Jail's grievance policy in response to Defendants' Motion for Summary Judgment, [see Filing No. 50], but rather raised it for the first time at the March 7 hearing. That was a consequential omission as to the Plaintiffs whose claims were dismissed on summary judgment. But given that summary judgment was denied as to Mr. Baker, it did not impact his claims.

complaint"); *Williams v. City of Philadelphia*, 270 F.R.D. 208, 221-22 (E.D. Pa. 2010) ("The evidence in this case establishes that there is no available administrative remedy for overcrowding in the PPS. The PPS's grievance policy specifically states that '[n]o grievance may be filed concerning ... matters beyond the control of the PPS.'… The record shows that overcrowding is a matter that is beyond the control of the PPS…. Indeed, overcrowding appears to be the paradigmatic example of a situation that is not addressable through the grievance process because it is beyond the control of the PPS. The last 40 years of litigation over prison conditions as a result of overcrowding in the PPS is a testament to this. We are satisfied that the PPS grievance system does not offer 'the possibility of some relief for the action complained of.' The District Attorney's exhaustion argument therefore fails to defeat class certification") (quoting *Booth*, 532 U.S. at 738).

    The Court finds that Mr. Baker did not need to file a grievance or exhaust the administrative process related to overcrowding at the Jail as it is a matter not within the Jail's control. But the Court also finds that issues related to Jail conditions not caused by overcrowding did require Mr. Baker to file a grievance (but, as discussed above, did not require him to appeal the response to the grievance). Mr. Baker's argument at the hearing was jumbled and overbroad, as it included many, many issues that he does not raise in this litigation or in his grievances. The Court finds that other issues Mr. Baker raised at the hearing, through testimony of current and former inmates, including fire hazards such as electrical wires submerged in water, access to medical care, sewage in cells, lack of security cameras to observe inmate behavior, cell doors being left opened, and lack of smoke detectors, were within the control of the jail, were grievable, but were not grieved by Mr. Baker and thus are beyond the scope of this litigation.

    Again, Mr. Baker's claims are limited to: (1) sleeping on the floor for 115 days "with nothing but a one-inch thick, moldy mat"; (2) "mold on the walls, ceiling, and floor of his cell";

(3) not being permitted to use the outside recreation area since April; and (4) being "forced to sleep naked in a padded cell and to share that cell with another naked inmate." [Filing No. 1 at 6-7.] The Court finds that the first issue – sleeping on the floor – is an allegation of overcrowding, and that Mr. Baker was not required to file a grievance related to this issue as discussed above.[8]

The remaining issues, however, relate to conditions at the Jail that Mr. Baker has not shown were outside of the Jail's control, and in fact were not. Accordingly, Mr. Baker was required to file grievances related to these issues. Specifically, as to the second issue, several current and former inmates testified that they complained about mold at the Jail, and that Jail officials gave them cleaning supplies to try to alleviate the mold problem. Moreover, the third and fourth issues – not being permitted to use the outdoor recreation area and sleeping naked in a padded cell that was shared with another naked inmate – are issues that could have been addressed by the Jail and potentially resolved. Because Mr. Baker did not file grievances related to mold, not being permitted to use the outside recreation area, and being forced to sleep naked in a padded cell and to share the cell with another naked inmate, he has not exhausted his administrative remedies regarding those issues and may not assert claims related to those issues in this litigation.

The Court acknowledges that some issues mentioned at the March 7 hearing, although not specifically referred to as "overcrowding," could be considered a direct result of overcrowding and so would be considered outside of the control of the Jail and would not require the filing of a grievance. Examples of these incidental issues include not being permitted to use the indoor

---

[8] Mr. Baker argued at the March 7 hearing that his May 23, 2016 grievance in which he complained about having four people in his cell, with two people sleeping on the floor, was a complaint about overcrowding. Commander Grider testified that he considered Mr. Baker's grievance to relate to his request for another inmate in his cell block to be moved. Because the Court has found that Mr. Baker did not need to file a grievance regarding overcrowding, it need not decide whether the May 23, 2016 grievance adequately raised the issue of overcrowding.

recreation area (because it is being used for housing inmates so is not available for recreation), lack of access to running water due to being housed in the indoor recreation area, and increased fighting due to housing too many inmates in areas together.

The only issue Mr. Baker alleged in his Complaint that is arguably related to overcrowding, however, is increased fighting due to housing too many inmates in the same area. Accordingly, he is limited to pursuing claims related to overcrowding in his cell block, and increased fighting due to that overcrowding. Mr. Baker failed to raise, and/or exhaust administrative remedies for, any other claims.

## IV.
### CONCLUSION

For the foregoing reasons, the Court finds that:

- The Jail's grievance procedure was sufficiently clear such that inmates were required to file initial grievances in order to exhaust their administrative remedies;

- The Jail's appeals process was vague and unknown to inmates, so inmates were not required to appeal initial grievance decisions in order to exhaust their administrative remedies;

- The issue of overcrowding was beyond the control of Jail officials so, according to the grievance procedure set forth in the Inmate Handbook, Mr. Baker was not required to file a grievance related to overcrowding in order to exhaust his administrative remedies;

- Mr. Baker was required to file grievances to complain about Jail conditions unrelated to overcrowding – including issues he raised in the Complaint relating to mold, not being permitted to use the recreation area, and being forced to sleep naked in a padded cell shared with another naked inmate – and did not do so;

- Mr. Baker may proceed with this litigation on the issues of overcrowding in his cell block and increased fighting caused by overcrowding.

March 14, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**